# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **MAPLE HEIGHTS CITY SCHOOL DISTRICT BOARD OF EDUCATION** | : : | **Case No.: 1:14CV1033** |
| | : : | **Judge Christopher A. Boyko** |
| **Plaintiffs,** | : : | **Magistrate Judge Baughman, Jr.** |
| v. | : : | |
| **A.C., Individually and on Behalf of A.W., a Minor** | : : : | |
| **Defendants.** | : | |

## PARENT A.C.'S MOTION FOR ATTORNEYS' FEES AND COSTS AND MOTION TO LIFT THE STAY IN CASE NO. 1:13-CV-2710

Pursuant to Fed. R. Civ. P. 54(d), 28 U.S.C. § 1920, and 20 U.S.C. § 1415(i)(3)(B)(i)(I), and this Court's order (ECF No. 39), A.C. ("A.C."), the parent of A.W. ("A.W."), moves the Court for an award of attorneys' fees and costs incurred in pursuing the administrative process and claims before this Court in the amount of $550,335.75, which accounts for time spent up to the date of this motion. (Fees Statement, attached as Exhibit 1). A.C. also seeks $538.57 in costs. (Bill of Costs, attached as Exhibit 2).

A.C. was successful at several levels in this litigation resulting in the overturning of two erroneous disciplinary decisions, a finding that Maple Heights City School District Board of Education denied A.W. a free and appropriate education for almost an entire school year, and a large amount of compensatory educational services for A.W. As a prevailing parent of a child with a disability, A.C. is entitled to an award of attorneys' fees and costs under the IDEA, 28 U.S.C. § 1920, and Fed. R. Civ. P. 54(d). Additionally, A.C. requests an award of fees and costs

reasonably incurred as a result of this motion. A memorandum in support is attached and incorporated by reference.

      Finally, A.C. requests that the Court lift the stay on related Case No. 1:13-CV-2710, which A.C. filed to preserve her right to request an award of attorneys' fees and costs, so that all issues regarding attorneys' fees in this matter can be resolved.

                                  Respectfully submitted,

                                  s/ Laura Osseck
                                  Laura Osseck (0082231)
                                  Trial Attorney
                                  losseck@disabilityrightsohio.org
                                  Kristin Hildebrant (0042086)
                                  khildebrant@disabilityrightsohio.org
                                  Ohio Disability Rights Law and Policy Center, Inc.
                                  **DISABILITY RIGHTS OHIO**
                                  50 W. Broad St., Suite 1400
                                  Columbus, OH 43215
                                  (614) 466-7264 (Phone)
                                  (614) 644-1888 (Fax)
                                  *Counsel for A.C. and A.W.*

**MEMORANDUM IN SUPPORT**

I.  **BACKGROUND**

On March 11, 2013, A.C., the parent of A.W., filed an administrative complaint on behalf of A.W. and herself for due process and request for hearing with the Ohio Department of Education ("ODE") against Maple Heights City School District Board of Education ("Maple Heights") challenging Maple Heights' imposition of improper disciplinary measures for disability-related conduct against A.W. and the district's provision of a free appropriate public education ("FAPE") to A.W.  Over the course of these three-year proceedings, the parties engaged in substantial briefing and evidentiary hearings before an impartial hearing officer, appeals to the State Level Review Officer and complaints and counterclaims regarding the SLRO's decision in this Court.

The initial stage of this case began with A.C.'s complaint and request for a due process hearing before an impartial hearing officer ("IHO").  This administrative phase was the most time and work-intensive.  In addition to the submission of the initial pleadings to begin this action, the parties also briefed the issue of A.W.'s "stay-put" (A.W.'s educational placement pending the outcome of the proceedings) and a preliminary stay-put evidentiary hearing was held before the IHO.  The hearing required significant preparation as the parties presented several witnesses, including A.C.'s expert witness, as well as multiple exhibits.  Additionally, the parties submitted post-hearing briefs to the IHO.  On the same day as the stay-put hearing, a disclosure conference was held in which both sides exchanged information that they may use as evidence in the upcoming full evidentiary hearing.  Throughout the IHO-level review, the parties also had several telephone status conferences with the IHO to determine hearing dates and other deadlines and briefed several issues, many at the IHO's request, including: a clarification of the issues to be presented at the hearings and several motions for extensions of time for the IHO to issue a

hearing decision. Prior to the full hearing, the parties were required to submit subpoena requests to the IHO, exchange witness lists, submit stipulations and motions in limine, and prepare and submit joint and individual exhibit binders. Further, the IHO allowed communications from the parties only by mail or fax, which increased the time and amount of work necessary from the parties, particularly when emergencies arose and the IHO needed to be reached immediately.[1]

A six-day full evidentiary hearing was held before the IHO in which twelve witnesses and numerous exhibits were presented. After extensive post-hearing briefing, the IHO issued his decision on November 7, 2013 finding in favor of A.C., on behalf of A.W., and against Maple Heights on the majority of significant issues. The IHO found:

> a) The Parent proved by a preponderance of the evidence that the Student's conduct that was the subject of the October 1 6, 2012 manifestation determination was a manifestation of the Student's disabilities.
>
> b) The Parent proved by a preponderance of the evidence that the Student's conduct that was the subject of the March 4, 2013 manifestation determination was a manifestation of the Student's disabilities.
>
> c) The Parent proved by a preponderance of the evidence that the February 1, 2012 IEP denied the Student FAPE.
>
> d) The Parent proved by a preponderance of the evidence that the March 11, 2013 IEP denies the Student FAPE.
>
> e) The Parent did not prove by a preponderance of the evidence that the chart used during the August 24, 2012 ETR meeting was an invalid assessment tool.
>
> f) The Parent did not prove by a preponderance of the evidence that the School is unable to provide FAPE going forward, nor did the Parent prove by a preponderance of the evidence that the School's teachers and staff require training by an expert in order to provide FAPE going forward.

---

[1] Phone calls were permitted only when both the school and the parent were both on the phone. Email was not permitted at all unless the IHO specifically requested that email be used.

      g) The Parent did not prove by a preponderance of the evidence that the School failed to adequately train its teachers and staff.

Accordingly, the IHO ordered:

      a) The Student's IEP team shall conduct a functional behavioral assessment of the Student within sixty days of the School's receipt of this Decision and shall complete that assessment as soon as practicable, and shall prepare and implement, as soon as practicable, a behavioral intervention plan for the Student.

      b) The Student shall be returned to the placement from which she was removed due to the March 4, 2013 manifestation determination.

      c) The School shall provide 234 hours of one-on-one compensatory education to the Student, in school, during the 2013-2014 school year.

Most significantly, the IHO found that Maple Heights' manifestation determination review decisions and subsequent expulsions were improper and that where A.W. was placed during her expulsion was inappropriate and denied her a FAPE. And he found that A.W.'s March 2013 IEP continued to deny her a FAPE. In essence, he found that she did not receive the education she was entitled to for almost an entire school year.

Both parties appealed the IHO's decision to the State Level Review Officer ("SLRO") in December 2013. Again, after extensive briefing (the parties submitted briefs each approximately 100 pages in length), the SLRO issued her decision on March 5, 2014. The SLRO also found in A.C.'s favor and against Maple Heights on the majority of significant issues. The SLRO upheld the IHO's determinations on most issues, including the IHO's determination that Maple Heights' manifestation determination review decisions and expulsions of A.W. were improper; A.W.'s placement on home instruction during periods of expulsion denied her a FAPE; A.W.'s March

3

2013 IEP denied A.W. a FAPE; and A.W. is entitled to compensatory education.[2] In other words, the SLRO confirmed the IHO's decision that demonstrated Maple Heights failure to provide A.W. with a FAPE for almost an entire school year. The SLRO reversed the IHO's determination that the February 1, 2012 IEP denied A.W. a FAPE based on her interpretation of the parties' settlement agreement and modified the IHO's award of compensatory education to 125 hours.

Both parties filed appeals/civil complaints related to the SLRO's decision to this Court in May 2014. The parties' submitted initial briefs on September 8, 2014, response briefs on October 10, 2014, and reply briefs on November 14, 2014. The parties also filed several subsequent motions and briefs as issues arose. The Court issued its final determination in this matter on June 27, 2016 affirming the SLRO's order finding in favor of A.C. on a majority of significant issues, and A.C. now seeks an award of attorneys' fees and costs as a prevailing parent in this action.

**Stay in Related Case No. 1:13-CV-2710**

On December 9, 2013, A.C. filed a complaint with this Court to preserve her right as a prevailing party to attorneys' fees pursuant to 20 U.S.C. § 1415(i)(3)(B)(i)(I). That case (Case No. 1:13-CV-2710) was assigned to Judge Boyko. The parties then appealed the IHO's decision to the SLRO and after the SLRO's decision was issued in March 2014, the parties filed the pleadings in the instant matter, which were transferred to Judge Boyko as a related case to Case No. 1:13-CV-2710. See, 1:14-cv-1033, ECF No. 4. Case No. 1:13-CV-2710 was then stayed pending the outcome of the Court's ruling regarding the SLRO decision since resolution of the appeals would affect the outcome of that case. See, Case No. 1:13-CV-2710, ECF No. 38. A.C.

---

[2] Maple Heights has not provided any compensatory education to A.W. as a result of these proceedings; accordingly, A.W. is still entitled to receive compensatory education paid for by Maple Heights.

now seeks a ruling pursuant to Rule 54(d) in the instant matter as well as a lift of the stay in Case No. 1:13-CV-2710 to resolve all issues regarding attorneys' fees for these proceedings.

## II. LAW AND ARGUMENT

### A. A.C. is entitled to an award of attorneys' fees and under the IDEA, 28 U.S.C. § 1920, and Fed. R. Civ. P. 54(d) because she is a prevailing party.

IDEA, 28 U.S.C. § 1920, and Federal Rule of Civil Procedure 54 entitle A.C. to an award of attorneys' fees and costs in this action. Federal Rule of Civil Procedure 54(d)(2) allows prevailing parties to recover attorney's fees and related expenses provided that a judgment and statute, rule, or other grounds entitle the party to such an award. Fed. R. Civ. P. 54(d)(2)(B)(ii). IDEA includes a fee-shifting provision that states: "[i]n any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs- - . . . (I) to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i)(I). Attorneys' fees under IDEA's fee-shifting provision are allowable costs under 28 U.S.C. § 1920. *Arlington Center School Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 297-8 (2006) ("This language ['may award reasonable attorneys' fees as part of the costs'] simply adds reasonable attorney's fees incurred by prevailing parents to the list of costs that prevailing parents are otherwise entitled to recover [set out in 28 U.S.C. § 1920]".)

The Sixth Circuit applies the *Buckhannon* "prevailing party" standard in IDEA cases where prevailing parents seek attorneys' fees from school districts. *See*, *Tompkins ex rel. A.T. v. Troy Sch. Dist.,* 199 Fed. App'x 463, 466 (6th Cir. 2006) (the court applied the *Buckhannon* analysis when determining whether the parents were eligible for attorneys' fees under IDEA as prevailing parties); s*ee also*, *B.H. v. West Clermont Bd. of Educ.*, 788 F. Supp. 2d 682, 702 (S.D. Ohio 2011) (the court granted an attorneys' fee award to parents as prevailing parties citing the *Buckhannon* standard). Under *Buckhannon*, a party is a prevailing party where (1) it receives "at

5

least some relief on the merits of [its] claim," and (2) there is a "judicially sanctioned change in the legal relationship of the parties." *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health and Human Res.* 532 U.S. 598, 603, 605 (2001) (abrogated on other grounds).  The Sixth Circuit also requires an award of attorney's fees to be granted to a prevailing party in IDEA cases unless special circumstances militate against it.  *Wikol ex rel. Wikol v. Birmingham Pub. Sch. Bd. of Educ.*, 360 F.3d 604, 611 (6th Cir. 2004) citing *Berger v. City of Mayfield Heights*, 265 F.3d 399, 406 (6th Cir.2001) (internal quotation omitted) ("Sixth Circuit case law requires that a district court award attorney fees to a prevailing party where no special circumstances militate against such an award.")

In this case, A.C. received on behalf of A.W. a total of 125 hours of compensatory education, had overturned two erroneous manifestation determination review decisions and subsequent expulsions, received a finding that A.W.'s educational placement during periods of expulsion denied her a FAPE (this represents almost the entire time at issue in this case), received a finding that A.W.'s March 11, 2013 IEP denied her a FAPE, and received an educational assessment to improve A.W.'s services moving forward.  These wins are significant, particularly the manifestation determination review and expulsion decisions because they set a precedent that may impact future outcomes of disciplinary events and make it more likely that an IEP team would find those events related to A.W.'s disabilities, thus preventing future prolonged periods of expulsion.  Undoubtedly, the IHO, SLRO, and Court orders have resulted in significant relief for A.W. and have materially altered the legal relationship between the parties.  Accordingly, A.C. may properly seek attorneys' fees and costs from Maple Heights as the prevailing party in this action.

A.C. is also entitled to an award of additional attorneys' fees and costs incurred as a result of the instant motion.  *See*, *Keene v. Zelman*, No. 2:06-CV-389, 2008 WL 2202011, at *1 (S.D. Ohio May 23, 2008) citing *Kaseman v. D.C.*, 444 F.3d 637, 640 (D.C. Cir. 2006) (noting the general rule that the court may award additional fees for time reasonably devoted to obtaining attorneys' fees).  A.C. must request attorneys' fees via motion under Rule 54(d); therefore, she is also entitled to recover fees for the time spent presenting this motion to the Court.  If the Court grants this motion, A.C. will supplement the record to include contemporaneous time records for time spent on this motion.

### B. A.C.'s Request for Attorneys' Fees is Reasonable.

After determining whether a party is entitled to fees, a court must then determine whether the fees are reasonable.  *See*, *Paschal v. Flagstar Bank*, 297 F.3d 431, 434 (6th Cir. 2002) citing *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999).  A reasonable award is calculated based on the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983).  In calculating this "lodestar" amount, the prevailing party should exercise billing judgment to exclude from the fee request hours that are excessive, duplicative, or otherwise unnecessary.  *Id.* at 434.  There is a strong presumption that the lodestar amount is a reasonable fee to be awarded to prevailing parties.  *See*, *Blanchard v. Bergeron*, 489 U.S. 87, 95 (1989) citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986); *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350(6th Cir. 2000).

#### 1. A.C.'s attorneys' rates are reasonable.

A.C.'s attorneys' rates are reasonable given the experience of counsel and the complexity of the issues raised in this case.  To determine a reasonable rate, courts look to the prevailing market rate, defined as the rate of lawyers with comparable skill and experience.  *Ne. Coal. for*

7

*Homeless v. Brunner*, No. 2:06-CV-896, 2010 WL 4939946, *7 (S.D. Ohio Nov. 30, 2010) citing *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004); *see also*, 20 U.S.C. § 1415(i)(3)(C). "'In determining the reasonable rate, the Court has the discretionary authority to consider a party's submissions, awards in analogous cases, and its own knowledge and experience from handling similar requests for fees.'" *Ne. Coal.* at 2010 WL 4939946, *7, citing *Project Vote v. Blackwell*, No. 1:06-CV-1628, 2009 WL 917737,*5 (N.D. Ohio, Mar. 31, 2009) (internal citations omitted).

For attorneys who have no private practice like Disability Rights Ohio[3], the rates customarily charged in the community for similar services can be looked to for guidance. *See Eggers v. Bullitt Cty. Sch. Dist.*, 854 F.2d 892, 899 (6th Cir. 1988) (attorneys for publicly funded state agencies are entitled to reasonable fees at fair market value); *Blum v. Stenson*, 465 U.S. 886, 895 (1984) (attorneys for a non-profit legal services organization are entitled to reasonable fees at prevailing market rates).

A.C.'s fee request is based on billing rates that have applied to A.C.' counsel in past litigation and are comparable to rates customarily charged in the community by lawyers with similar background, skill level, and experience. Disability Rights Ohio most recently updated its billing rates in October 2012, prior to the filing of the administrative action in this case. (Declaration of Kerstin Sjoberg-Witt, Esq., attached as Exhibit 3). The rates set by Disability Rights Ohio in October 2012 for attorneys and paralegals were upheld by the Southern District of Ohio in a 2013 order granting all attorney fees requested. *Mooneyhan v. Husted*, No. 3:12-CV-379, 2013 WL 1326506, ECF No. 22, Decision and Entry Sustaining Plaintiff's Motion for Attorneys' Fees and Costs (S.D. Ohio, March 29, 2013) (Order attached as Exhibit 4). Disability

---

[3] Disability Rights Ohio is a non-profit organization and the federally mandated Protection and Advocacy system for the State of Ohio. Disability Rights Ohio's mission is to advocate the human, civil and legal rights of people with disabilities in Ohio; these services are free to people with disabilities. Any award of fees is program income governed by 45 CFR Part 75.307 and will be used to further the mission of Disability Rights Ohio.

Rights Ohio's rates were upheld again in a 2014 decision in the Southern District.  See, *Gibson v. Forest Hills Sch. Dist., Bd. of Educ.*, No. 1:11-CV-329, 2014 WL 3530708, ECF No. 67, Order Granting Motion for Attorneys' Fees (S.D. Ohio, July 15, 2014), (Order attached as Exhibit 5). Significantly, the *Gibson* case involved an IDEA administrative action that was appealed to federal court like this case.

In addition, A.C. supports this fee petition with a declaration from an experienced practitioner familiar with the rates for this type of work in the relevant market:  "The rates sought by the counsel in this case are typical of those billed by attorneys of similar background and experience for this type of litigation in the relevant market, which in this case is the State of Ohio."  (Declaration of Franklin J. Hickman, attached as Exhibit 6).  Attorney Frank Hickman practices in the Northern District of Ohio and in the area of special education law.

Additionally, special education law is a highly specialized practice area and there are few lawyers available to represent parents and students with disabilities in these matters. Consequently, A.C. appropriately sought representation from Disability Rights Ohio, an agency that specializes in litigation related to the rights of people with disabilities, including special education claims.  The trial attorney in this case, Laura Osseck, has approximately nine years of litigation experience with almost six years devoted to disability-related issues, including special education.  Co-counsel in this case, Kristin Hildebrant, has 27 years of litigation experience primarily in special education law.  John Harrison and Derek Hamalian, other attorneys who worked on this matter, combined have over 40 years of disability and special education related litigation experience.

Finally, Disability Rights Ohio properly assigned attorneys with the expertise and experience necessary to navigate a complex special education case such as this, and

9

appropriately delegated tasks to ensure efficient representation.  Trial Attorney Laura Osseck conducted the bulk of the work in this matter.  Attorneys John Harrison and Derek Hamalian primarily participated in the stay-put and evidentiary hearings that took place.[4]  Attorney Kristin Hildebrant provided day-to-day strategic guidance and oversight, and participated in the trial team as needed, in her role as the special education team leader and the attorney with the most experience in this area of law. Director of Advocacy and Assistant Executive Director Kerstin Sjoberg-Witt provided guidance on strategy and input on significant pleadings.

Work by the attorneys was capably supported over time by paralegals Christine Retherford, Laura Bordeau, and Leslie Cole.  Their involvement contributed to effective presentation and organization of the claims without unnecessarily utilizing experienced attorneys to perform support tasks.  Together, these attorneys and paralegals offered a fully competent and experienced team that ensured a favorable outcome for A.C. and A.W.

The accompanying declarations by all Disability Rights Ohio staff for whom fees are sought provide support for the A.C.'s counsels' experience and expertise.  See attached exhibits: (Declaration of Kerstin Sjoberg-Witt, Esq., attached as Exhibit 3; Declaration of Laura Osseck, Esq., attached as Exhibit 7; Declaration of Kristin Hildebrant, Esq., attached as Exhibit 8; Declaration of Laura E. Bordeau, attached as Exhibit 9; Declaration of Leslie Cole, attached as Exhibit 10).

### 2. The amount of time spent on the case was reasonable given its complexity and fact-intensive nature, as well as A.W.'s unique needs.

Parents challenging a student's IEP have the burden of proof in IDEA cases.  To meet her burden in this case, A.C. was required to prove that Maple Heights' manifestation determination review decisions and subsequent expulsions were erroneous.  A.C. was also required to prove

---

[4] Ms. Osseck was unable to participate in person at these hearings due to temporary pregnancy-related travel restrictions.

that Maple Heights denied A.W. a FAPE and that A.W. was harmed as a result.  Additionally, proof in this case was made more complex because of the nature of A.W.'s disabilities, the effect of those disabilities on her learning, and the numerous educational records presented in this case. To prove how A.W.'s disabilities impact her learning and her behavior, A.C. had to present expert testimony and other evidence regarding A.W.'s complex diagnoses, how they affect her, and how they present in a school setting. Proving the elements necessary for a denial of FAPE for A.W. required presentation of a large number of educational documents created over several years, including evaluations, educational records, and testimony from a variety of witnesses. Given the complexity and breadth of this case, A.C.'s counsel spent a great deal of time preparing and litigating the lengthy administrative process which lasted almost a year and involved writing numerous briefs, motions, responses, and replies necessary to adequately address the issues and advance the case to end with a final comprehensive remedy for A.W.

    A.C. has submitted with this petition detailed contemporaneous time entries reflecting the work done by all attorneys and paralegals in obtaining a positive outcome.  *See, Paschal*, 297 F.3d at 434 (approving of billing entries that included detailed description of how the billed hours were spent); *Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway,*, 46 F.3d 1392, 1402 (6th Cir. 1995) (approving documentation as adequate where prevailing party submitted time entries that "accompanied by a date, a description of the activity involved, the amount of time expended on such activity, and the total amount owed for that activity").  A.C.'s billing records identify the work done with sufficient detail to ensure that the lodestar has been reasonably calculated.

11

       **a)**    **A.C. was successful in obtaining an excellent outcome for A.W., so she should be awarded a full recovery of fees.**

In determining the reasonableness of fees, the U.S. Supreme Court has explained that "where a plaintiff has obtained excellent results, [the] attorney[s] should recover a fully compensatory fee." *Hensley*, 461 U.S. at 435.  This normally encompasses all hours reasonably expended on the litigation.  *Id.*  A.C. should be awarded a fully recoverable fee based upon the excellent success achieved as a result of this litigation.

A.C. brought this case to obtain appropriate educational services to enable A.W. to develop the academic and functional skills she needed to matriculate through school and successfully transition to adulthood.  A.C. successfully litigated a multifaceted IDEA complaint and achieved an excellent result.  This outcome conferred a significant benefit on A.W. because she was awarded compensatory and prospective services and supports and had overturned two erroneous manifestation determination decisions and expulsions, which will also impact her future educational services.  This Court upheld the essential elements of her claim:  that A.W. was subject to improper discipline and was denied a FAPE; she received services and assessments to address this deficiency.

       **b)**    **A.C. reasonably included time spent on unsuccessful claims that were so intertwined with successful claims as to make dividing the hours expended difficult.**

Where it was possible to do so, A.C.'s counsel took careful steps to exercise billing judgment so as to exclude time distinctly spent on unsuccessful claims.  However, some time spent on unsuccessful claims was so highly intertwined with a successful claim, it was not distinct.  See, *Barnes v. City of Cincinnati*, 401 F.3d 729, 745 (6th Cir. 2005), ("[S]uccessful and unsuccessful claims are deemed related when they involve a common core of facts are based on

12

related legal theories or when counsel's time is devoted generally to the litigation as a whole, making it difficult to divide the hours expended") (internal citations omitted).

For example, time related to the stay-put hearing is included because much of the preparation time for that hearing would have also been necessary to prepare for the full evidentiary hearing as the evidence presented at both hearings was based on the same core facts and related legal theories.  Additionally, A.C. presented and tendered her expert witness at the stay-put hearing and obtained agreement that the expert's testimony and admitted exhibits at the stay-put hearing were part of the record of the full hearing to avoid duplicating testimony and exhibits.

Time spent litigating issues such as A.W.'s out-of-district placement and the adequacy of A.W.'s February 1, 2012 IEP are also included as they were based on the same core of facts and legal theories as other successful claims and were so intertwined with the litigation as a whole that distinguishing time spent on those issues is not practical.  Indeed, A.W. was successful at the IHO level regarding the February 1, 2012 IEP claim and though the SLRO subsequently overturned the IHO's decision on that issue and this Court upheld the SLRO's decision, A.W. still received almost the same result she would have had the claim been ultimately successful. All levels of review found that A.W. was denied FAPE during periods of expulsion because of the inappropriateness of her educational placement and ordered compensatory education as a result.  These periods of time overlap almost entirely with the relevant period covered by the February 1, 2012 IEP with the exception of a few weeks.  Accordingly, A.W. received almost the same benefit that she would have had the SLRO and this Court upheld the IHO's initial finding that A.W.'s February 1, 2012 IEP denied her a FAPE.  Therefore, the time is properly included in A.C.'s request for fees.

13

### 3. A.C.'s exercise of billing judgment is reasonable.

As this case has begun its fourth year, the gross fees incurred total $838,568.00. (Fees Statement, attached as Exhibit 1). However, in calculating the lodestar, A.C.'s counsels have exercised billing judgment to exclude time that might be considered excessive, duplicative, or otherwise unnecessary. A.C. now seeks reimbursement of $550,335.75 in fees and costs. *Id.*

After A.C.'s counsels' review of the time entries for this matter, billing judgment was exercised to exclude: (1) five timekeepers who billed minimal time to this matter and potentially represent duplicative time; (2) all time related to ancillary matters, including all time spent on claims dismissed from related Case No. 1:13-CV-2710; (3) any timekeeping that was deemed excessive, clerical, or duplicative; and (4) work that was distinct and only for unsuccessful claims. Additionally, time for travel to and from the hearing and other case related travel was reduced by half.

All total, A.C. eliminated approximately $288,232.25 from this fee request in the exercise of billing judgment. *Id.* This adjustment represents a fair and reasonable reduction of hours in light of the multiple resources necessary to conclude this case.

### C. A.C.'s costs are reasonable.

A.C.'s request for costs in the amount of $538.57 is reasonable because she asked for only those costs that are generally allowable under IDEA and 28 U.S.C. § 1920. *see also*, *Arlington*, 548 U.S. at 297-8. A.C. removed all mileage and postage costs as well as expert fees and included only those costs allowable under Section 1920, such as witness, transcript, and copying costs and that were necessary to the presentation of the case. (Bill of Costs, attached as Exhibit 2). Accordingly, A.C.'s costs are reasonable.

### III.  CONCLUSION

For the reasons stated above, A.C. is entitled to attorneys' fees in the amount of $550,335.75, costs in the amount of $538.57, and a reasonable amount for fees and costs incurred for pursuing this motion.  If the Court grants this motion, A.C. will supplement with contemporaneous fee records for time spent on this motion. A.C. also requests that the Court lift the stay on related Case No. 1:13-CV-2710 so that all issues regarding attorneys' fees in this matter can be resolved.

      Respectfully submitted,

      s/ Laura Osseck
      Laura Osseck (0082231)
      Trial Attorney
      losseck@disabilityrightsohio.org
      Kristin Hildebrant (0042086)
      khildebrant@disabilityrightsohio.org
      Ohio Disability Rights Law and Policy Center, Inc.
      **DISABILITY RIGHTS OHIO**
      50 W. Broad St., Suite 1400
      Columbus, OH  43215
      (614) 466-7264  (Phone)
      (614) 644-1888  (Fax)
      *Counsel for A.C. and A.W.*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 11th day of July, 2016, a copy of the foregoing Parent A.C.'s Motion for Attorneys' Fees and Costs and Motion to Lift the Stay in Case No. 1:13-CV-2710 was served on all counsel of record via the Court's electronic filing system.

      s/ Laura Osseck
      Laura Osseck (0082231)
      Trial Attorney